**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GIRARD ENOCH OSBORNE,
Plaintiff-Appellant,

v.

NATIONAL UNION LIFE INSURANCE

COMPANY OF PITTSBURGH,
PENNSYLVANIA; HANSON INDUSTRIES,
INCORPORATED; MW MANUFACTURERS,
INCORPORATED,
Defendants-Appellees.

No. 94-1790

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-93-18-D)

Argued: April 5, 1995

Decided: February 21, 1996

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Garland Bass, Sr., CARTER, CRAIG, BASS,
BLAIR & KUSHNER, Danville, Virginia, for Appellant. Robert
Andrew Mullen, WOOTEN & HART, P.C., Roanoke, Virginia, for

Appellees. **ON BRIEF:** Dale Thomas Blair, CARTER, CRAIG, BASS, BLAIR & KUSHNER, Danville, Virginia, for Appellant. David B. Hart, WOOTEN & HART, P.C., Roanoke, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

On August 29, 1988, Appellant Girard Osborne was driving a truck in Virginia on behalf of his employer, MW Manufacturers, Inc. Another driver, who has never been identified, forced Osborne off of the road. Osborne sustained serious injuries in the ensuing accident.

At the time of the accident, Osborne was covered by two separate insurance policies. He had purchased motor vehicle insurance from State Farm Fire and Casualty Company that covered him while he was driving on the job and that provided uninsured motorist (UM) coverage of up to $100,000. MW Manufacturers, through its parent company, Hanson Industries, had purchased motor vehicle insurance from Appellee National Union Fire Insurance Company of Pittsburgh that covered MW's employees while they were driving on the job and that provided the minimum UM coverage permitted by state law, $25,000.**1** See Va. Code Ann. §§ 38.2-2206(A), 46.2-472. Under state law, National Union was the primary insurer and State Farm was the secondary insurer. See Va. Code Ann. § 38.2-2206(B).

_____

**1** At trial and on appeal, Osborne contended that the limit of National Union's UM coverage was $2,000,000, not $25,000. Because we hold that National Union may deny all coverage whatsoever, we need not decide whether National Union's liability would have been equal to or greater than the minimum level of coverage mandated by Virginia law.

2

Pursuant to Va. Code Ann. § 38.2-2206(E), **2** Osborne filed suit in the Circuit Court of Henry County against "John Doe," the unidentified driver who caused Osborne's accident, and served process upon both State Farm and National Union. After obtaining a judgment for $299,750, Osborne sought payment under both policies.

Osborne settled his claim against State Farm for $65,000. National Union, however, refused to make any payment whatsoever, prompting Osborne to file the instant action against the company. National Union successfully removed the action to federal district court pursuant to 28 U.S.C. § 1441.**3**

The district court granted National Union's subsequent motion for summary judgment. The court noted that the insurance contract contained a clause stating that "[t]his insurance does not apply to any claims settled without our consent," then found that Osborne had settled the claim with State Farm without National Union's consent. Though National Union had not proven that it had been prejudiced by Osborne's dealings with State Farm, and though no decision of a Virginia court was precisely on point, the district court found that a "fair and careful reading" of Virginia law suggested that the validity of a consent-to-settlement clause in an insurance contract in no way depends upon a finding of prejudice to the insurer.

Osborne appealed, arguing that his settlement with State Farm does not bar recovery from National Union.

_____

**2** Section 38.2-2206(E) provides:

> If the owner or operator of any vehicle causing injury or damages is unknown, an action may be instituted against the unknown defendant as "John Doe" . . . . Service [of process] upon the insurer issuing the policy shall be made as prescribed by law as though the insurer were a party defendant.. . . The insurer shall have the right to file pleadings and take other action allowable by law in the name of John Doe.

**3** The parties were diverse--National Union was a Pennsylvania corporation with its principal place of business outside the Commonwealth of Virginia and Osborne was a Virginia citizen--and Osborne was seeking damages in excess of $50,000. See 28 U.S.C.§ 1332.

3

We must review the grant of summary judgment <u>de novo</u>. <u>Bailey v. Blue Cross & Blue Shield of Virginia</u>, 67 F.3d 53, 56 (4th Cir. 1995).

II.

Osborne has argued that the consent-to-settlement provision applies only to settlements with uninsured drivers, and not to settlements with third-party insurers; that the consent-to-settlement provision is void because it conflicts with state laws requiring insurers to provide UM coverage; and that National Union "apparent[ly] or implied[ly] consent[ed]" to his settlement with State Farm. Each of these contentions lacks merit. The consent-to-settlement clause plainly states that it applies to "any claims," without regard to whether the settlement is negotiated with the negligent driver or an insurer. Virginia courts have permitted insurers to deny UM coverage due to noncompliance with a consent-to-settlement clause when necessary to protect "the insurer's power to preserve potential sources of recovery." <u>Virginia Farm Bureau Mut. Ins. Co. v. Gibson</u>, 374 S.E.2d 58, 61-62 (Va. 1988). And the record simply does not support Osborne's contention that he settled with State Farm with National Union's consent.

What was less clear to us, however, was whether National Union could deny coverage on the basis of Osborne's failure to comply with the terms of the policy even if the company had not been prejudiced by Osborne's actions. Finding no controlling precedent on that issue, we submitted to the Supreme Court of Virginia the following certified question:[4]

> Whether National Union may deny UM coverage to Osborne on the grounds that Osborne settled with State Farm without National Union's consent, when National Union's UM contract contained a consent-to-settlement clause but National Union was not prejudiced by the settlement.

_____

[4] In so doing, we acted pursuant to Article VI, Section 1, of the Constitution of the Commonwealth of Virginia and Rule 5:42 of the Rules of the Supreme Court of Virginia.

4

In an opinion dated January 12, 1996, the Supreme Court of Virginia answered our question in the affirmative. The court identified three grounds for its ruling. First, observing that"[w]hen the terms of an insurance policy are clear and unambiguous, we give the words their ordinary meaning and enforce the policy as written," see Atlas Underwriters, Ltd. v. Meredith-Burda, Inc., 343 S.E.2d 65, 68 (Va. 1986), the court determined that the consent-to-settlement provision was plain and unambiguous. Op. at 3. Second, the court stated that it had not required a showing of prejudice in other cases in which coverage was denied due to the insured's failure to comply with policy provisions. Op. at 3-4; see, e.g., State Farm Fire and Casualty Co. v. Walton, 423 S.E.2d 188, 192 (Va. 1992) (stating that if a violation of a policy's provision requiring timely notice of an accident "is substantial and material, the insurance company need not show that it was prejudiced by such a violation" in order to deny coverage). Third, the court observed that while the Virginia General Assembly has declared that an insurer must demonstrate prejudice before denying coverage due to the insured's failure to comply with certain policy provisions, see, e.g., Va. Code Ann. § 38.2-2204(C) (stating that an insurer may deny coverage due to an insured's failure to comply with a cooperation clause only if the failure to cooperate prejudices the insurer), the General Assembly "has not taken such action with reference to consent-to-settlement clauses." Op. at 4.

Because, under Virginia law, National Union need not show prejudice in order to deny coverage on the basis of Osborne's failure to comply with the consent-to-settlement provision of the National Union policy, we hold that the district court did not err when it granted National Union's motion for summary judgment.

III.

We have carefully reviewed each of Appellant's remaining arguments and find them to be without merit. The decision of the district court is accordingly

AFFIRMED.

5