Horace C. **LAMBERTON**, Jr., et al., Plaintiffs,

v.

The **TRAVELERS INDEMNITY COMPANY**, a Connecticut corporation and E. Lionel Pavlo, Defendants.

Superior Court of Delaware, New Castle.

Aug. 20, 1974.

Walter L. Pepperman, II, and Robert F. Stewart, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

John J. Schmittinger, and Larry W. Fifer, of Schmittinger & Rodriguez, Dover, for defendants.

## OPINION

TEASE, Judge.

The plaintiff in this action is a partnership of consulting engineers, trading as "Howard, Needles, Tammen & Bergendoff" (hereinafter Lamberton), which partnership purchased a professional liability policy from defendant, The Travelers Indemnity Company, (hereinafter "Travelers"), and it seeks a ruling from this Court on motion for summary judgment as to the proper "deductible" amount under that policy. One of the defendants, Pavlo, was engaged in a joint venture with the plaintiff for the design and construction of the Second Delaware Memorial Bridge and Pavlo was joined as a defendant in the action for the purpose of determining the division of responsibility for payment of the deductible amount between Pavlo and the plaintiff. Therefore, for purposes of the present motion, the involvement of Pavlo is not significant.

On April 10, 1964, Travelers issued to Lamberton and Pavlo an Architect's and Engineer's Professional Liability Policy providing errors and omissions coverage in connection with the professional services to be rendered by Lamberton and Pavlo pursuant to their contract with the Delaware River and Bay Authority for the design and construction of the aforesaid bridge.

During the policy period an incident occurred in connection with the construction work wherein a wooden form collapsed while concrete was being poured and that collapse caused injury and death to several persons working on and around the form at the time. Eight of the injured workmen and the estate of a deceased workman filed an action in this Court against the joint venture, which action was compromised and settled on the eve of trial.

The deductible provisions of the policy in question were and are as follows:

### "DECLARATIONS

\*     \*     \*     \*     \*     \*

Item 3.   Limit of Liability $1,000,000 aggregate
                      Less $     10,000 deductible
                                        (*each claim*)

\*     \*     \*     \*     \*     \*

### CONDITIONS

\*     \*     \*     \*     \*     \*

3. *Limit of Liability, Deductible.* The limit of liability stated in the declarations as "aggregate" is the total limit of the company's liability for all damages during the policy period. Subject to the foregoing, the liability of the company with respect to *each claim* shall be only for the amount of each such claim that is in excess of the deductible amount stated in the declarations." (Emphasis mine)

In accordance with it's interpretation of the "each claim" provisions, at settlement of the aforesaid litigation Travelers demanded that Lamberton and Pavlo pay the entire deductible amount of $10,000 with respect to *each separate settled claim* for a

total of $80,000 ($10,000 for each of 8 plaintiffs), but Lamberton took the position that the insureds were required to pay only the total sum of $10,000 under the aforesaid provisions of the policy.

Pavlo refused to pay any share of the $80,000 demanded by Travelers; so in order that the settlement might be consummated within the policy limits Lamberton proceeded to pay the $80,000 based upon a reservation of rights to contest the issue raised by this motion and without prejudice to its right to do so. This suit resulted from that reservation and the inability of the parties to agree on the proper construction of the policy provisions.

In summary, Lamberton demands that the Court entered judgment against Travelers in the sum of $70,000 (plus interest from the date upon which the settlement money was paid over to Travelers for distribution) because its exposure was limited, it claims, to the sum of $10,000. (The parties agree that the controversy between Lamberton and Pavlo as to the proportionate responsibility for the proper deductible amounts shall be reserved for resolution at a later time.) Travelers argues that the proper amount has been paid by Lamberton and that the plaintiff's motion must be denied.

■ Lamberton bases its motion on the ambiguity of the words "each claim" in the deductible provisions of the policy and accurately cites several Delaware cases supporting the proposition that the terms of an insurance contract must be construed strongly in favor of the insured and against the insurer. Travelers qualifiedly accepts the latter proposition but claims that the quoted words are not, in this context, ambiguous in any sense.

■ The cited cases for the strict construction theory also enforce the well-established rule that a strict construction is proper only when an ambiguity is found to exist. Novellino v. Life Insurance Company of North America, 9 Storey 187, 216 A.2d 420 (Del.Supr.—1966) Mutual Ben. Life Ins. Co. of Newark v. Bailey, 5 Storey 215, 190 A.2d 757, 759 (Del.Supr.—1963). Of course, where the language of an insurance policy is clear, even though contained in an exclusionary provision, then both the insurer and the insured are bound by it's terms as in any arms length transaction. Sammons v. Nationwide Mut. Ins. Co., 267 A.2d 608, 609 (Del.Super.—1970).

■ Consequently, it becomes necessary to first determine whether the quoted words are ambiguous as used in the policy in question. Our Courts have held that ambiguity exists where the language used has two or more reasonable interpretations, Callaway v. Nationwide Mut. Ins. Co., 248 A.2d 617, 619 (Del.Super.—1968), or where the deliberate selection of language causes confusion. *Novellino, supra.*

■ Plain words may not be twisted under the guise of construction to give them an unintended meaning because to do so would be to rewrite a contract of insurance that was not contemplated by the parties. Metropolitan Life Ins. Co. v. Landsman, 5 W.W.Harr. 384, 165 A. 563 (Del.Super.—1933).

■ The question of whether the words in the deductible provision of the policy, "each claim", apply to each *occurrence of an incident* causing injury or to each *assertion by a person injured by an incident* that he is entitled to compensation therefor, has never been squarely presented in the cases cited by counsel in their briefs under the exact language and form found in the policy written by Travelers. Each of the cases is distinguishable, and analogies are therefore difficult or impossible, because of the use of words which have a flavor which differs from the words in the Travelers policy, such as "one accident", "one occurrence", "each accident", etc., or they can be distinguished from the instant case because they were being construed for an entirely different purpose than that involved here.

It is, therefore, helpful to seek some fundamental definitions in attempting to determine whether ambiguity exists in the instant case in the use of the words "each claim". The entire concept of the word, when viewed broadly, brings to mind someone who is asserting a right to something in the possession of another. A "claim" is a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another, an assertion or statement, or a demand for payment under an insurance policy upon the happening of the contingency against which the policy is issued. Furthermore, a "claim agent" might investigate and adjust a claim made for damage or loss and a "claimant" is one who asserts a right or title—a "claimer" is one that claims. Webster's Third New International Dictionary, G. & C. Merriam Co., 1966.

It seems an unwarranted distortion of this fundamental meaning to argue, as plaintiffs argue, that a claim refers to an incident or accident which gives rise to various claims under the terms of the policy. It is difficult to conceive of the word claim being used to describe an incident or event which causes trauma and resulting injury, absent some additional language forming a base upon which that interpretation can rest. It is the collapsing of the form which caused injury and which gave birth to certain claims of those injured—in no sense can the collapsing of the forms be called a claim. There is no basis for the use of that word in connection with the collapse of the forms and it cannot be imagined that anyone involved may have spoken to anyone else, be it the contractor or the insurance company, in terms that would suggest that a "claim" had occurred at the construction site at the bridge. It would be awkward to imagine a conversation regarding the fact that some workmen had just been seriously injured because a "claim" occurred at a construction site. It was an incident, an accident, a happening or occurrence.

However, we are furnished with a more substantial basis than theory and dictionaries for the position taken by Travelers.

The policy in question, in the Insuring Agreements beginning on page 3, uses in more than 20 places some form of the words "claim" and "act or omission of the insured". When the insuring agreements are read in their entirety any ambiguity in the exclusionary portion of the policy upon which this case revolves is removed. Throughout the policy "acts or omissions" of the insured is a phrase used to clearly designate something done or not done by the insured which may give rise to rights accruing to third parties against the insured. On the other hand, the words "claim" and "claimant" are clearly used in the insuring agreements to refer to those persons to whom rights accrue because of such acts or omissions of the insured.

When viewed in this context the insertion of those same words in the deductible provisions of the declarations clearly refers to each claim that may be filed against the insured as a result of something he has done or has failed to do, which has created rights in some third party or parties to file a claim and demand payment or compensation from the insured. The deductible provision of the policy applied to "each claim" filed against the insured as a result of any act or occurrence, error or omission, regardless of the number of such incidents giving rise to those claims.

I find no ambiguity in the use of the disputed words in this policy when viewed in the overall context of the policy and in light of the accepted general meaning of the word "claim". Having so ruled, it becomes unnecessary to comment upon most of the arguments of the counsel regarding strict construction of insurance policies, especially those involving words which were

clearly used in an ambiguous way and which tended, with one construction, to defeat the policy. Indeed, strict construction means nothing unless there is a clear ambiguity, a use of words which cannot easily be interpreted to have a clear and explicit meaning.

Likewise, the arguments of counsel regarding whether there were several accidents or occurrences or a single accident or occurrence have no bearing on the issue in this motion. We are concerned with only one accident or occurrence and several claims arising therefrom. Similarly, the arguments of counsel regarding the intent of the parties because of the possibility of reasonable or unreasonable results are of little assistance in determining the question before the Court. It is easily demonstrated, as counsel has so ably done, that different circumstances could give rise to very serious financial results either to the insured or the insurer. That is to say, one accident killing 100 people working on the bridge or 100 accidents each killing 1 person working on the bridge could both have disastrous financial results, depending upon the interpretation given to the policy at that time. In such circumstances, the Court has no alternative but to disregard what might be a harsh result and to assume that the parties considered all of those matters when reaching an agreement on their contract. It is a well accepted principle that a Court will not make an interpretation or construction which causes a ridiculous or untenable result. However, that situation is not presented here because, as stated above, inequities or financial hardships could run to either side depending upon equally plausible circumstances.

In view of the use of the words "act or omission" and "claim" throughout the policy in question, it would have been a simple matter for the plaintiff to have required the insurer to insert the words "$10,000 deductible for each act or omission of the insured" in item 3 of the declarations. The use of those words throughout the policy prevents the Court from now substituting one for the other in only one portion of the policy.

For the reasons set out herein plaintiffs' motion for summary judgment must be denied and It Is So Ordered.